UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN CHARLES VALDEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>SALAR NADERI, et al.,<br><br>    Defendants. | Case No. 24-cv-01087-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 33, 35 |

## I. INTRODUCTION

Pending before the Court is a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by Defendants City and County of San Francisco, Salar Naderi and Marc Jimenez. ECF No. 33. Plaintiff Stephen Valdez filed an Opposition (ECF No. 44) and Defendants filed a Reply (ECF No. 45). The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 26, 2024 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. BACKGROUND

Plaintiff Stephen Valdez alleges that Defendants Salar Naderi and Marc Jimenez, both police officers for the San Francisco Police Department ("SFPD"), used excessive force to detain him. First Amended Complaint ("FAC") ¶¶ 2, 7, ECF No. 29. Plaintiff alleges that on January 1,

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 13, 24, 31.

1    2023, he was walking down Market Street in San Francisco when Officer Naderi approached him,
2    told him he was being detained for littering, and physically pushed Plaintiff to a police vehicle.
3    FAC ¶ 10. Officer Jimenez "assisted in this detainment." FAC ¶ 10. Mr. Valdez alleges that he
4    initially "refused to comply with the officers and gave an alias as his name" and "argu[ed] that the
5    officers' actions were illegal and that he did not have to comply." FAC ¶ 11. When Mr. Valdez
6    attempted to leave, Officer Jimenez grabbed Plaintiff and put his hands behind his back. FAC
7    ¶ 11. Mr. Valdez alleges he then complied with the officers' instructions. FAC ¶ 11. Mr. Valdez
8    alleges that Officer Naderi then grabbed Mr. Valdez by the ears, dragged him to the ground,
9    twisted his neck into an awkward position and smashed his face into the concrete while applying
10   his weight to Mr. Valdez's neck and spine. FAC ¶ 12. Mr. Valdez was knocked unconscious.
11   FAC ¶ 12. Mr. Valdez alleges that at one point, Officer Naderi stopped exerting pressure and
12   looked at Mr. Valdez's neck, "then covered [Mr. Valdez's] neck with his hoodie and continued to
13   apply pressure to the same location." FAC ¶ 13. Mr. Valdez alleges Officer Naderi repeatedly
14   threatened to punch him if he moved and continued to apply pressure to Mr. Valdez's neck while
15   he lay on his stomach with his hands behind his back. FAC ¶¶ 14–15. Mr. Valdez alleges that
16   body camera footage corroborates these allegations. FAC ¶¶ 11–14.

17         Multiple officers then arrived at the scene, who ultimately requested an ambulance. FAC
18   ¶ 16. The San Francisco Fire Department determined that Mr. Valdez had suffered a neck injury.
19   FAC ¶ 16. Mr. Valdez was placed in a neck brace and transported to the hospital, where medical
20   staff determined he had sustained spinal cord injuries including cervical disc herniation, cervical
21   spinal stenosis and cervical myelopathy. FAC ¶¶ 9, 17, 18. During his hospitalization, Mr.
22   Valdez underwent multiple surgeries and procedures to treat injuries to his cervical spine,
23   including a bilateral interior cervical discectomy at C5-C6; bilateral foraminotomies at C5-C6;
24   interbody graft and fusion at C5-C6; placement of anterior cervical plate; and fluoroscopic
25   guidance. FAC ¶¶ 9, 18. Mr. Valdez alleges that he continues to suffer from numbness in his
26   right hand and severe carpal tunnel syndrome as a result of these injuries. FAC ¶ 19.

27         Mr. Valdez alleges that following the events of January 1, 2023, Officer Naderi
28   "threatened and harassed Plaintiff at his work and at his residence[,]" causing him severe stress

1    and fear "for his well-being and livelihood." FAC ¶¶ 20–21. Mr. Valdez ultimately relocated to
2    another state because of Officer Naderi's alleged harassment. FAC ¶ 21.
3          On February 22, 2024, Mr. Valdez filed a *pro se* action in this Court based on federal
4    question jurisdiction. Compl. ¶ 3, ECF No. 1. On May 1, 2024, Defendants filed a motion to
5    dismiss Plaintiff's complaint. ECF No. 22. On May 30, 2023, Plaintiff filed his First Amended
6    Complaint ("FAC"), which superseded Plaintiff's original complaint. ECF Nos. 29 (FAC), 32
7    (order finding as moot Defendant's motion to dismiss).
8          In his FAC, Plaintiff alleges (1) excessive force in violation of the Fourth Amendment to
9    the U.S. Constitution against Defendants Naderi and Jimenez pursuant to 42 U.S.C. Section 1983
10   (FAC ¶¶ 23–30); (2) failure to intervene in violation of the Fourth Amendment to the U.S.
11   Constitution against Defendant Jimenez and DOES 1–10 pursuant to 42 U.S.C. Section 1983
12   (FAC ¶¶ 31–34); (3) *Monell* claims pursuant to 42 U.S.C. § 1983 against Defendant City and
13   County of San Francisco, Defendant Naderi, Defendant Jimenez and Defendant DOES 1–10 (FAC
14   ¶¶ 35–37); (4) violation of the Bane Act, Cal. Civil Code 52.1 against Defendant City and County
15   of San Francisco, Defendant Naderi, Defendant Jimenez and Defendant DOES 1–10 (FAC ¶¶ 38–
16   41); (5) intentional infliction of emotional distress as against Defendant Naderi, Defendant
17   Jimenez and Defendant DOES 1–10 (FAC ¶¶ 42–45); (6) battery against Defendant Naderi,
18   Defendant Jimenez and Defendant DOES 1–10 (FAC ¶¶ 46–48).
19         In Defendants' Motion to Dismiss, Defendants seek judgment on (1) Plaintiff's *Monell*
20   claim (Claim Three); (2) Plaintiff's state law claims under the Bane Act and for IIED and battery
21   (Claims Four, Five, and Six); (3) Plaintiff's Bane Act claim against Officer Jimenez (Claim Four);
22   and (4) Plaintiff's Intentional Infliction of Emotional Distress claim (Claim Five) against Officer
23   Jimenez. Mot. at 4–9.

### III.   LEGAL STANDARD

25         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal
26   sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff
27   can prove no set of facts in support of his claim which would entitle him to relief." *Cook v.*
28   *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). The Court

must liberally construe a *pro se* litigant's complaint. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011)). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

In Defendants' Motion to Dismiss, Defendants seek judgment on (1) Plaintiff's *Monell* claim (Claim Three); (2) Plaintiff's state law claims under the Bane Act and for IIED and battery (Claims Four, Five, and Six); (3) Plaintiff's Bane Act claim against Officer Jimenez (Claim Four);

1  and (4) Plaintiff's Intentional Infliction of Emotional Distress claim (Claim Five) against Officer

2  Jimenez. Mot. at 4–9.

3  **A.     Request for Judicial Notice**

4  Defendants ask the Court to take judicial notice of four facts:

5      1.  Plaintiff submitted a claim against the City and County of San Francisco on June 2, 2023.

6

7      2.  Plaintiff submitted a first amended claim against the City and County of San Francisco on June 27, 2023.

8      3.  Plaintiff submitted a second amended claim against the City and County of San Francisco on June 29, 2023.

9

10      4.  The City rejected Plaintiff's claim by mailed letter on July 13, 2023.

11  ECF Nos. 35 at 2–3 (request for judicial notice); 33-1 (declaration of Brian Cauley); 34-1, 34-2,

12  34-3 and 34-4 (Exs. A – D to Cauley Decl). Mr. Valdez has not objected to the request. *See*

13  *generally* Opp'n.

14  Federal Rule of Evidence 201 allows the Court to "judicially notice a fact that is not

15  subject to reasonable dispute because it . . . can be accurately and readily determined from sources

16  whose accuracy cannot reasonably be questioned." F.R.E. 201(b)(2). Courts may consider

17  "matters of public record" in deciding a motion to dismiss. *Northstar Fin. Advisors Inc. v.*

18  *Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) (quoting *Coto Settlement v. Eisenberg,* 593

19  F.3d 1031, 1038 (9th Cir. 2010)).

20  The Court takes judicial notice of Mr. Valdez's June 2, June 27, and June 29, 2023 claims

21  claim against the City because they are matters of public record that are not subject to reasonable

22  dispute. The Court takes judicial notice of the fact that the City mailed a rejection letter to Mr.

23  Valdez's then-counsel on July 13, 2023. *See Roy v. Contra Costa Cnty.*, No. 15-CV-02672-TEH,

24  2015 WL 5698743, at *2 n.6 (N.D. Cal. Sept. 29, 2015) (taking judicial notice of plaintiff's

25  Government Claim and city defendants' notice rejecting claim).

26

27

28

5

**B.     Plaintiff's *Monell* Claim**

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "[M]unicipalities and other local government units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 563 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting

*Monell*, 436 U.S. at 694). "A policy or custom may be found either in an affirmative proclamation of policy or in the failure of an official 'to take any remedial steps after [constitutional] violations.'" *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (holding that a jury could find a policy or custom of using excessive force from the police chief's failure to discipline officers for such conduct)); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1235 (9th Cir. 2011) (holding "evidence of a recurring failure to investigate and discipline municipal officers for constitutional violations can help establish the existence of an unconstitutional practice or custom" of using excessive force).

Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Third, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

### 1. Plaintiff's *Monell* Claim Against Individual Defendants Fails Because *Monell* Does Not Apply to Individual Defendants

Defendants contend Plaintiff fails to state a *Monell* claim against Officers Naderi and Jimenez and DOES 1–10 because *Monell* is not viable against individual Defendants. Mot. at 4. Plaintiff alleges that these individual Defendants "were acting pursuant to a policy or custom of Defendant City of San Francisco to willfully fail to investigate, fail to discipline, fail to adequately train, and thereby condone repeated constitutional violations by [SFPD] officers, including . . . using excessive force in violation of the Fourth Amendment." FAC ¶ 36. But "*Monell* does not concern liability of individuals acting under color of state law." *Guillory v. Orange Cnty.*, 731 F.2d 1379, 1382 (9th Cir. 1984). Rather, *Monell* offers a vehicle for bringing Section 1983 claims

1    against local government bodies.  Because a plaintiff cannot bring a *Monell* claim against an

2    individual, Plaintiff's *Monell* claims against the individual Defendants must be dismissed.

3          Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's *Monell* claim

4    against Officers Naderi and Jimenez and Defendant DOES 1–10, without leave to amend.

      **2.**      **Plaintiff's *Monell* Claim Against the City and County of San Francisco Fails Because He Does Not Allege Facts of Sufficient Specificity to Impose Liability on the City**

7          Defendants contend Plaintiff's *Monell* claim against the City must fail because the City is

8    not liable under Section 1983 for the acts of its employees under a *respondeat superior* theory and

9    because Plaintiff fails to allege prior similar constitutional violations to establish a pattern of such

10   violations.  Mot. at 4–6.

11         "[A] municipality cannot be held vicariously liable under section 1983 for the acts of its

12   employees. . . . Under *Monell*, a municipality may be liable only if the alleged constitutional

13   violation was committed pursuant to an official policy, custom or practice."  *Lelaind v. City &*

14   *Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1088-89 1093 (N.D. Cal. 2008) (citing *Monell*, 436

15   U.S. 658 ).  The fact that Officers Naderi and Jimenez and DOES 1–10 were employed by the City

16   as officers with SFPD, coupled with alleged constitutional violations by the individual

17   Defendants, is therefore not enough on its own to state a section 1983 (i.e. *Monell*) claim against

18   the City.

19         In support of his opposition to Defendants' motion to dismiss Plaintiff's *Monell* claim

20   against the City, Plaintiff states he has attached PDFs of SFPD annual reports, an article from *The*

21   *Standard*, an email to City and County of San Francisco's Department of Police Accountability

22   requesting certain public records, and "misconduct violations by [SFPD] that were investigated

23   and disciplined."  *See* Opp'n at 1, 2, 5.  A district court generally may not consider any material

24   beyond the pleadings in ruling on a Rule 12(b)(6) motion without treating the motion as a Rule 56

25   motion for summary judgment.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per

26   curiam); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see* Fed. R. Civ. P. 12(d).  "A

27   court may, however, consider certain materials—documents attached to the complaint, documents

28   incorporated by reference in the complaint, or matters of judicial notice—without converting the

1    motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903,
2    908 (9th Cir. 2003).  Plaintiff did not attach any of these materials to his FAC, nor may the Court
3    consider them incorporated by reference.  Plaintiff did not refer to any of these documents in his
4    FAC, nor do they appear to inform the allegations that make up his current Section 1983 claim
5    against the City.  *See generally* FAC; FAC ¶¶ 35–37.  Because these documents are outside the
6    scope of what the Court may consider in deciding a motion to dismiss under Rule 12(b)(6), the
7    Court excludes these documents from consideration in ruling on this motion.
8          Plaintiff's *Monell* claim is primarily based on a longstanding practice or custom theory,
9    alleging the City "maintained a widespread practice or custom condoning and failing to prevent
10   constitutional violations of [SFPD] and its members causing Plaintiff's injuries" and that Officers
11   Naderi and Jimenez and DOES 1–10 "were acting pursuant to a policy or custom of Defendant
12   City of San Francisco to willfully fail to investigate, fail to discipline, fail to adequately train, and
13   thereby condone repeated constitutional violations by [SFPD] officers, including . . . using
14   excessive force in violation of the Fourth Amendment."  FAC ¶¶ 36, 37.  To plead a *Monell* claim
15   through a longstanding practice or custom, it "must be so 'persistent and widespread' that it
16   constitutes a 'permanent and well settled city policy.'"  *Trevino v. Gates*, 99 F.3d 911, 918 (9th
17   Cir. 1996).  "Liability for improper custom may not be predicated on isolated or sporadic
18   incidents; it must be founded upon practices of sufficient duration, frequency and consistency that
19   the conduct has become a traditional method of carrying out policy."  *Id.* (citations omitted).
20   Although the Ninth Circuit has not "established what number of similar incidents would be
21   sufficient to constitute a custom or policy," *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794
22   (9th Cir. 2017), Plaintiff's FAC fails to allege facts to support an inference that the practices were
23   so "persistent and widespread" as to constitute a City policy.  *See Navarro v. Block*, 72 F.3d 712,
24   714 (9th Cir. 1995) ("Proof of random acts or isolated events is insufficient to establish custom.").
25         The FAC does not contain specific factual allegations supporting the existence of a policy,
26   custom, or practice beyond Plaintiff's own experiences.  Plaintiff does not reference any specific
27   instances of unlawful conduct or events that form the basis for "a policy or custom . . . to willfully
28   fail to investigate, fail to discipline, fail to adequately train," or "a policy or custom . . . to prevent

1  constitutional violations[.]" FAC ¶¶ 36, 37. Rather, his *Monell* allegations against the City are
2  completely threadbare and conclusory.
3        Plaintiff alleges that the City's policies or customs included "fail[ing] to adequately train"
4  SFPD officers. FAC ¶¶ 36. "A plaintiff alleging a failure to train claim under *Monell* must show:
5  (1) she was deprived of a constitutional right, (2) the municipality had a training policy that
6  amounts to deliberate indifference to the constitutional rights of the persons with whom its police
7  officers are likely to come into contact, and (3) her constitutional injury would have been avoided
8  had the municipality properly trained those officers." *Bryant v. City of Antioch*, No. 21-Ccv-
9  00590-TSH, 2021 WL 3565443, at *7 (N.D. Cal. Aug. 12, 2021) (citing *Young v. City of Visalia*,
10 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009)). As with liability based on improper practice or
11 custom, Plaintiff's allegations regarding inadequate training or supervision are threadbare and
12 conclusory.
13       Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's *Monell* claim
14 against the City and County of San Francisco. The Court **GRANTS** Plaintiff leave to amend.

## C. Compliance with the Government Claims Act

16       Defendants contend Plaintiff's state law claims must be dismissed for failure to comply
17 with the Government Claims Act. Mot. at 6–8. The California Government Claims Act, Cal.
18 Gov't Code § 810 *et seq.*, "is a comprehensive statutory scheme that sets forth the liabilities and
19 immunities of public entities and public employees for torts." *Cordova v. City of Los Angeles*, 61
20 Cal. 4th 1099, 1104–05 (2015) (quotation marks omitted). The Government Claims Act requires
21 plaintiffs to present "'all claims for money or damages against local public entities' . . . to the
22 responsible public entity before a lawsuit is filed." *City of Stockton v. Superior Court*, 42 Cal. 4th
23 730, 734 (2007) (quoting Cal. Gov't Code § 905). The Government Claims Act also applies to
24 claims against public employees and former public employees for acts or omissions committed
25 within the scope of their employment as public employees. Cal. Gov't Code § 950.2. *See also*
26 *Briggs v. Lawrence*, 230 Cal. App. 3d 605, 613 (1991) (noting "what amounts to a requirement
27 that (with exceptions not relevant here) one who sues a public employee on the basis of acts or
28 omissions in the scope of the defendant's employment have filed a claim against the *public-entity*

*employer* pursuant to the procedure for claims against public entities") (emphasis in original); *Olson v. Manhattan Beach Unified Sch. Dist.*, 17 Cal. App. 5th 1052, 1055 n.1 (2017) ("The defense of noncompliance with the Government Claims Act also applies to the claims against [individual defendant public employee].)"

A plaintiff's complaint must "allege facts demonstrating or excusing compliance with this claim presentation requirement[.]" *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1237 (2004). *See also Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (requiring plaintiff to "allege compliance or circumstances excusing compliance" with the California Tort Claims Act).

Plaintiff's FAC does not state that he filed a claim with the City or when he filed that claim. Nor does Plaintiff's FAC state that his claim was denied and on what date. Plaintiff alleges that Officers Naderi and Jimenez were acting in the scope of their employment when they committed the acts giving rise to Plaintiff's claims. FAC ¶ 2. Because Plaintiff's FAC fails to allege compliance or circumstances excusing compliance with the Government Claims Act, his state law claims against both the City and Officers Naderi and Jimenez must be dismissed.

The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Defendants contend amendment of Plaintiff's state law claims is futile because Plaintiff failed to bring his claims within six months of the date the City provided notice of rejection of his claims. Mot. at 7–8. *See* Cal. Gov't Code § 945.6(a)(1) (requiring plaintiff to file lawsuit "not later than six months after the date [the notice of rejection] is personally delivered or deposited in the mail.") The City mailed a notice rejecting Mr. Valdez's June 2, June 27, and June 29 claims to his then-counsel, Mosley C. Collins III, on July 13, 2023. ECF No. 34-4. Mr. Valdez filed his original complaint in this Court seven months later, on February 22, 2024, and filed the FAC on May 30, 2024. ECF Nos. 1, 29. Mr. Valdez does not dispute that he failed to bring his state claims within six months of the rejection's deposit in the mail. *See generally* Opp'n. Instead, Mr.

11

1    Valdez contends he had two years to bring his claims because he did not personally receive notice
2    from the City that his claim had been denied.  Opp'n at 3; *see* Cal. Gov't Code § 945.6(a)(2)
3    (requiring plaintiff to file suit "within two years from the accrual of the cause of action" when
4    "written notice is not given").  But notice to a party's counsel is considered notice to the client,
5    and Plaintiff does not dispute that he had a lawyer when the City rejected his claims.  Opp'n at 3
6    (stating that "the court was notified in December 2023 that [Plaintiff's counsel] removed
7    themselves as representation for plaintiff.").  *See, e.g.*, *Watson v. Sutro*, 86 Cal. 500, 516–17
8    (1890) ("Notice to counsel or attorney is constructive notice to client.")

9    In his opposition, Plaintiff asserts that his former counsel did not notify him of any
10   deadlines.  Opp'n at 3.  In support of this assertion, Plaintiff offers an unsigned declaration
11   indicating that his former counsel did not inform him of the deadline to file his claims.  *See* ECF
12   No. 44-3.  Because this declaration was neither attached to Plaintiff's FAC nor referenced within
13   it, the Court cannot consider it in deciding this motion.  *See Swartz*, 476 F.3d at 763.
14   Still, "[t]he doctrine of equitable tolling may [] apply to the [six month] limitation periods
15   imposed by" the Government Claims Act.  *J.M. v. Huntington Beach Union High Sch. Dist.*, 2
16   Cal. 5th 648, 657 (2017).  *See also Turnacliff v. Westly*, No. 05-cv-05303-SI, 2006 WL 1867721,
17   at *3 (N.D. Cal. July 6, 2006) (noting "the doctrine of equitable tolling rests upon the reasoning
18   that a claim should not be barred unless the defendant would be unfairly prejudiced if the plaintiff
19   were allowed to proceed.").  The Court provides leave to amend in case Plaintiff may be able to
20   allege facts to show that the deadline to file suit was subject to equitable tolling, or if there is some
21   other basis to allege that he complied with the Government Claims Act or that compliance was
22   somehow excused.

23   Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's state law
24   claims.  The Court **GRANTS** leave to amend.

25                                    **V.    CONCLUSION**

26   For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss.  The
27   Court **GRANTS** Plaintiff leave to amend his *Monell* claim as to the City and County of San
28   Francisco and his claims under California law.  If Plaintiff chooses to amend, his Second

12

Amended Complaint shall be filed by October 23, 2024.

**IT IS SO ORDERED.**

Dated: September 25, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge