UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN CHARLES VALDEZ,

          Plaintiff,

   v.

SALAR NADERI, et al.,

          Defendants.

Case No. 24-cv-01087-TSH

**ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Re: Dkt. Nos. 67, 69

## I.  INTRODUCTION

Plaintiff Stephen Charles Valdez filed a complaint against Defendants City and County of San Francisco, Officer Salar Naderi, and Officer Marc Jimenez (collectively, "Defendants"), alleging civil rights violations stemming from the use of excessive force during a detention.  ECF No. 66 (Third Amended Complaint).  Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 67 ("Mot.").  The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 21, 2025, hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[1]

## II.  BACKGROUND

### A.  Factual Background

Valdez—who was a California resident when the events giving rise to this suit took place—moved to Mount Vernon, Washington in February 2024, where he remains today.  Third

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 13, 24, 31.

United States District Court
Northern District of California

Amended Complaint ("TAC") ¶ 1.  Defendant City and County of San Francisco (the "City") is a California public entity that operates the San Francisco Police Department ("SFPD") and wields authority over SFPD's policies and practices.  *Id.* ¶ 2.  Defendants Officer Salar Naderi ("Naderi") and Officer Marc Jimenez ("Jimenez"), both California citizens, are sworn law enforcement officers employed by the City as SFPD police officers.  *Id.* ¶¶ 3–4, 8, 11.

Overall, Valdez alleges that Naderi and Jimenez "abruptly stopped and physically assaulted [him] without cause" and under pretext, and "used excessive force to restrain [him] which resulted in significant and life-altering injuries."  *Id.* at 2.  Valdez underwent "significant surgery" for these injuries and continues to live with "discomfort, pain, and limitations on his day-to-day activities."  *Id.*

### 1.    Valdez's Allegations Of Excessive Force And Resulting Injuries

Valdez alleges the following in his TAC which the Court accepts as true for the purposes of this Motion.  On January 1, 2023, Valdez was walking down Market Street in San Francisco, California, when Naderi "aggressively darted" toward Valdez to detain him—Naderi grabbed Valdez's left arm "with unnecessary force."  *Id.* ¶¶ 10, 15.  Although Valdez had not littered, Naderi told Valdez he was being detained for littering and, with the assistance of Jimenez, physically pushed Valdez to a police vehicle.  *Id.* ¶¶ 15–16.  Because he was panicked by Naderi's "aggressive questioning," Valdez gave Naderi his brother's name when asked to identify himself.  *Id.* ¶ 17.  Valdez complied with the officers' instructions "[d]espite the officers' unwarranted hostility," and was forced down to sit on the sidewalk ground by Naderi.  *Id.* ¶¶ 18–19.

While Naderi was running a warrant search, Valdez "got up from the sidewalk ground as he believed he had done nothing wrong and could not be lawfully detained."  *Id.* ¶¶ 20–21.  When Valdez attempted to leave, Jimenez grabbed Valdez.  *Id.* ¶ 21.  Naderi then grabbed Valdez by the ears, dragged him to the ground, twisted his neck into an awkward position and slammed his left temple into the concrete while applying his weight to Valdez's neck and spine.  *Id.* ¶¶ 23–24.  Valdez was in and out of consciousness due to the force of the blow to his head.  *Id.* ¶ 23.  Valdez did not resist while on the ground, and Jimenez did not intervene in Naderi's "use of excessive force" against Valdez.  *Id.* ¶ 24.  Jimenez "pinned and restrained" Valdez's hands while he was on

the ground.  *Id.* ¶ 27.

At one point, Naderi stopped exerting pressure and looked at Valdez's neck, which was "red and swollen," then "placed [Valdez's] hoodie back and pressed down even harder on his neck."  *Id.* ¶ 28.  Naderi repeatedly threatened to punch Valdez if he moved and continued to apply pressure to Valdez's neck while he lay on his stomach with his hands behind his back.  *Id.* ¶¶ 27–28.  Valdez was not moving and was in and out of consciousness.  *Id.* ¶ 28.  Jimenez then handcuffed Valdez.  *Id.*  Naderi "used a technique called positional asphyxia" which "compressed [Valdez's] respiratory airway on the concrete sidewalk, impairing his ability to breathe."  *Id.* ¶ 29.  Valdez, who was short of breath, said to Naderi, "I'm done dude, please stop."  *Id.*  Jimenez "continued to pin [Valdez] down to the ground and [Valdez] pleaded, 'I didn't do anything wrong, you guys stopped me for no reason!'"  *Id.* ¶ 30.

At least five additional patrol cars and ten police officers then arrived on scene and surrounded Valdez.  *Id.* ¶ 31.  A bystander yelled, "All I see is two cops beating the shit out of a guy!," to which Naderi responded, "All I see is a loser with no life, alright get the hell out of here!"  *Id.*  The officers "noticed a large gash on the left temple of [Valdez's] head" but did not immediately provide Valdez with medical attention.  *Id.* ¶ 32.  Later, one officer asked Valdez if he needed an ambulance, and Valdez "replied yes because his head was in severe pain."  *Id.* ¶ 35.

An ambulance ultimately arrived on scene, and two EMTs from the San Francisco Fire Department examined Valdez.  *Id.* ¶¶ 39–40.  While being examined, Valdez "felt a severe burning sensation and pain and asked to go to the hospital."  *Id.* ¶ 40.  The EMTs placed Valdez in a neck brace and transported him to San Francisco General Hospital and Trauma Center ("SFGH") where medical staff determined he had sustained spinal cord injuries including spinal canal stenosis.  *Id.* ¶¶ 41–44.  Valdez arrived at SFGH "approximately three hours after [Naderi and Jimenez] initially stopped [Valdez]."  *Id.* ¶ 42.

After arriving at SFGH, Valdez was visited by several government officials, including an investigator from the San Francisco Department of Police Accountability ("SF DPA"), for an interview.  *Id.* ¶ 52.  During the interview, which Valdez believes was recorded, Valdez stated he was terrified for surgery and traumatized by his attack.  *Id.* ¶¶ 52–53.  The officials "apologized to

3

[Valdez] for the attack, and promised to hold the police officers responsible for the attack accountable for their actions." *Id.* ¶ 53.

During his hospitalization, Valdez underwent multiple surgeries and procedures to treat injuries to his spine, including an anterior cervical discectomy at C5–C6; bilateral foraminotomies at C5–C6; interbody graft and fusion at C5–C6; and placement of anterior cervical plate. *Id.* ¶¶ 55–59. Valdez continues to suffer from numbness in both of his hands and feet and carpal tunnel syndrome because of these injuries—his continuing impairments prevent him "from working full-time as a welder." *Id.* ¶¶ 74–77. Valdez also "continues to suffer from anxiety, depression, paranoia, and post-traumatic stress caused by the attack on January 1, 2023." *Id.* ¶ 78.

On January 9, 2023, Valdez was discharged from SFGH and taken into custody by the City. *Id.* ¶ 60. Valdez was held in San Francisco County Jail until mid-March 2023, when he was released. *Id.* ¶¶ 61–62.

### 2. Activities Occurring After The Alleged Incident

The parties agree that the following actions occurred following Valdez's encounter with Naderi and Jimenez. Valdez filed written claims against Defendant City on June 2, June 27, and June 29, 2023, which were rejected by Defendant City on July 13, 2023. *See* Defendants' Request for Judicial Notice at 2–3 (ECF No. 35); Opp. at 9:25–10:2 (citing ECF Nos. 34-1, 34-2, 34-3, 46 at 5); *see also* ECF No. 46 at 5 (Order Granting Request for Judicial Notice).

Valdez alleges the following in his TAC which the Court accepts as true for the purposes of this Motion. In mid-July 2023, while living in San Francisco, Valdez became employed at Urban Alchemy in San Francisco. TAC ¶¶ 62, 73. Between June and December 2023, Naderi "taunted and harassed" Valdez on at least five separate instances while Valdez was in San Francisco. *Id.* ¶¶ 63–68. First, in early June 2023, Naderi, who was in a patrol car, passed Valdez near the Civic Center and said to Valdez, "Valdez, I got you, I see you." *Id.* ¶ 64. Second, in early August 2023, Naderi, who was with five unknown police officers near UN Plaza, said to Valdez, "Valdez, why don't you leave San Francisco, nobody wants you here." *Id.* ¶ 65. Third, around Fall 2023, Naderi pointed Valdez out to a crowd of unknown police officers near Market Street. *Id.* ¶ 66. Fourth, around November 2023, Naderi said to two unknown police officers near

Davies Symphony Hall, "Look, it's the man of the hour," while staring at Valdez with an intimidating expression. *Id.* ¶ 67. Finally, around December 2023, Naderi, who was in a patrol car with an unknown police officer, drove past Valdez while Valdez was at Urban Alchemy for work and said to Valdez, "Valdez, Valdez, Valdez," while shaking his head. *Id.* ¶ 68. Valdez reported this incident to the SF DPA by leaving a voicemail for the investigator there. *Id.*

Due to Naderi's "continued harassment and threats," Valdez "feared for his well-being and safety in San Francisco." *Id.* ¶ 69. Valdez refused to leave his apartment in San Francisco, left only for essential purposes, and "feared for his life every time he saw a police officer." *Id.* Valdez was also "ostracized and humiliated by his co-workers," and he was "eventually forced to quit his job at Urban Alchemy out of safety concerns, mental anguish, and humiliation." *Id.* ¶ 70. Valdez feared the consequences if he filed a formal lawsuit against Naderi and Jimenez and feared retaliation from his co-workers at Urban Alchemy who told him that "he would be ok" if he did not file a formal lawsuit. *Id.* ¶¶ 70–71. In mid-February 2024, Valdez moved from San Francisco to Mount Vernon, Washington because he "could no longer live with the constant fear of living in San Francisco." *Id.* ¶ 73. On or around the same day that he moved, Valdez filed the original complaint in this case. *Id.*, *see generally* Compl.

## B.    Procedural Background

On February 22, 2024, Valdez filed a *pro se* action in this Court based on federal question jurisdiction. Compl. ¶ 3 (ECF No. 1). On May 1, 2024, Defendants filed a motion to dismiss the original complaint. ECF No. 22. On May 30, 2024, Valdez filed a first amended complaint ("FAC"), which superseded his original complaint, against Defendants City, Naderi, Jimenez, and Does 1–10. ECF No. 29. In his FAC, Valdez alleged six causes of action: (1) excessive force in violation of the Fourth Amendment to the U.S. Constitution against Defendants Naderi and Jimenez pursuant to 42 U.S.C. § 1983; (2) failure to intervene in violation of the Fourth Amendment to the U.S. Constitution against Defendants Jimenez and Does pursuant to 42 U.S.C. § 1983; (3) *Monell* claims pursuant to 42 U.S.C. § 1983 against Defendants City, Naderi, Jimenez, and Does; (4) violation of the Bane Act, Cal. Civil Code § 52.1, against Defendants City, Naderi, Jimenez, and Does; (5) intentional infliction of emotional distress against Defendants Naderi,

1    Jimenez, and Does; and (6) battery against Defendants Naderi, Jimenez, and Does.  FAC ¶¶ 23–

2    48.  On September 25, 2024, the Court dismissed several claims from the FAC and granted Valdez

3    leave to amend some of the claims.  ECF No. 46.  Valdez then filed a second amended complaint

4    on November 25, 2024, again as a *pro se* litigant.  ECF No. 51.

5         On December 16, 2024, the Court stayed the case and referred Valdez to the Federal Pro

6    Bono Project.  ECF No. 55.  On April 10, 2025, the Court appointed Valdez counsel to represent

7    him in this action.  ECF No. 57.

8         On May 21, 2025, with the assistance of counsel, Valdez filed the operative Third

9    Amended Complaint ("TAC") against Defendants City, Naderi, and Jimenez.  ECF No. 66.  In his

10    TAC, Valdez brings ten causes of action:  (1) excessive force in violation of the Fourth

11    Amendment against Defendants Naderi and Jimenez pursuant to 42 U.S.C. § 1983; (2) failure to

12    intervene in violation of the Fourth Amendment against Defendants Naderi and Jimenez pursuant

13    to 42 U.S.C. § 1983; (3) failure to train and supervise in violation of the Fourth Amendment

14    against Defendant City pursuant to 42 U.S.C. § 1983; (4) *Monell* claim for unconstitutional

15    custom or policy against Defendant City pursuant to 42 U.S.C. § 1983; (5) violation of the Bane

16    Act, Cal. Civil Code § 52.1, against Defendants City, Naderi, and Jimenez; (6) intentional

17    infliction of emotional distress against Defendants City, Naderi, and Jimenez; (7) battery against

18    Defendants City, Naderi, and Jimenez; (8) negligent hiring, training, and retention against

19    Defendant City; (9) negligence against Defendants City, Naderi, and Jimenez; and (10) false arrest

20    and false imprisonment against Defendants City, Naderi, and Jimenez.  TAC ¶¶ 79–134.  Valdez

21    seeks monetary damages and injunctive relief.  *Id.* ¶¶ 135–41.

22         On June 20, 2025, Defendants filed their instant Motion to Dismiss pursuant to Rule

23    12(b)(6), arguing that dismissal is warranted—on all but one of Valdez's claims—for failing to

24    state a cognizable claim.  ECF No. 67 ("Mot.").  On July 21, 2025, Valdez filed an Opposition.

25    ECF No. 68 ("Opp.").  Valdez also filed a Request for Judicial Notice in support of his

26    Opposition.  ECF No. 69.  On August 4, 2025, Defendants filed a Reply.  ECF No. 70 ("Reply").

### III.   LEGAL STANDARD

28    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

United States District Court
Northern District of California

sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or

1  refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be

2  disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen

3  a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent

4  motions to amend is particularly broad.") (cleaned up).

## IV.  DISCUSSION

6  Defendants move to dismiss nine of Valdez's claims for failing to state a cognizable claim:

7  Failure to Intervene Claim against Defendant Naderi (Claim 2); section 1983 and *Monell* Claims

8  against Defendant City (Claims 3–4); and all state law claims against all Defendants (Claims 5–

9  10).  Mot. at 2:3–9.  However, in their Reply, Defendants state that they do not seek dismissal of

10  Claim 2 against Defendant Naderi.  Reply at 9:10–17.

11  In sum, the Court concludes that Valdez fails to allege cognizable claims for failure to train

12  and supervise, *Monell* liability, and negligent hiring, training, and retention.  Therefore, dismissal

13  of Claims 3, 4, and 8 is warranted.  However, the Court concludes that Valdez alleges cognizable

14  claims for failure to intervene, violation of the Bane Act, IIED, battery, negligence, and false

15  arrest and false imprisonment.  Therefore, dismissal of Claims 2, 5, 6, 7, 9, and 10 is not

16  warranted.

### A.      Request For Judicial Notice

18  Valdez asks the Court to take judicial notice of four facts:

> 1. Valdez submitted a formal complaint to the San Francisco Department of Police Accountability ("SF DPA") on February 14, 2023, to investigate the January 1, 2023, incident and the officers involved in the incident (the "complaint").

> 2. The case number assigned to the complaint was 00053729-23.

> 3. Valdez was assigned investigator, Ellen Dolese, to investigate the complaint.

> 4. The SF DPA issued findings for the complaint on January 14, 2025.

25  *See* ECF Nos. 69 (Request for Judicial Notice), 68-1 (Declaration of Chardaie C. Charlemagne),

26  68-2 (Charlemagne Decl., Ex. A (SF DPA Webpage)).  Defendants do not object to the request in

27  their Reply.  *See generally* Reply.

28  The Federal Rules of Evidence allow the Court to "judicially notice a fact that is not

United States District Court
Northern District of California

subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts may consider "matters of public record" in deciding a motion to dismiss. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

The Court takes judicial notice of Valdez's complaint submitted to SF DPA on February 14, 2023, the case number assigned to the complaint, the investigator assigned to the complaint, and that SF DPA issued findings regarding the complaint on January 14, 2025, because they are matters of public record that are not subject to reasonable dispute. *See Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018) ("because of their perceived reliability, courts have often admitted records taken from websites maintained by government agencies").

## B. Failure To Intervene Claim Against Officer Naderi

Defendants argue that the Court should dismiss Valdez's Failure to Intervene Claim against Defendant Naderi (Claim 2) as time-barred because Valdez "makes this claim for the first time in his TAC, long after the two-year statute of limitations lapsed." Mot. at 2:10–11. Valdez contends that this claim is not time-barred because it relates back to his original complaint. Opp. at 1:18–19. In their Reply, Defendants "concede [the Claim] could relate back to the original pleading, or other pleadings filed with [*sic*] the statutory period, based on liberal relation-back standards." Reply at 9:10–14.

The Federal Rules of Civil Procedure permit a party to be brought in by amendment when:

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C); *see also id.* at (c)(1)(B) ("the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the

original pleading . . .").

Here, Defendants concede that Valdez's Failure to Intervene Claim against Defendant Naderi relates back to pleadings filed within the statutory period. The Court agrees and concludes that this Claim is not barred by the statute of limitations because the Claim relates back under Rule 15. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014) (explaining that in deciding whether the statute of limitations bars a claim, courts must "consider both federal and state law and employ whichever affords the more permissive relation back standard") (cleaned up). Therefore, dismissal is not warranted.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Valdez's Failure to Intervene Claim against Defendant Naderi (Claim 2).

## C. Section 1983 Claims Against The City

Defendants argue that the Court should dismiss Valdez's section 1983 Claims (Claims 3– 4) against Defendant City because they "are too threadbare and conclusory to make out a claim against the City." Mot. at 2:12–13. Valdez contends that his "failure to train *Monell* claims are sufficiently pled."[2] Opp. at 7:8.

### 1. Failure To Train And Supervise In Violation Of Fourth Amendment

Defendants argue that the Court should dismiss Valdez's Failure to Train and Supervise Claim against Defendant City (Claim 3) because Valdez "does not plead any supervisory action or supervisor to whom Section 1983 liability could attach." Mot. at 5:17–21. Valdez does not address this argument in his Opposition. *See generally* Opp.

The Civil Rights Act provides in relevant part:

---

[2] At the outset, there is some ambiguity regarding Valdez's theory of liability for Claims 3 and 4 against Defendant City. In the TAC, Valdez titled Claim 3 as failure to train and supervise in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, and Claim 4 as a *Monell* claim for unconstitutional custom or policy, pursuant to 42 U.S.C. § 1983. TAC at 14–15. In their Motion, Defendants argue in the alternative against Claim 3, as either a claim not premised on *Monell* liability, or one that is premised on *Monell* liability. Mot. at 5–7. And in his Opposition, Valdez refers to Claims 3 and 4 as "his failure to train *Monell* claims." Opp. at 1:12–21. Looking at the face of the TAC, the Court construes Claim 3 as one not premised on *Monell* liability and Claim 4 as one that is premised on *Monell* liability. Therefore, the Court does not consider Defendants' arguments based on *Monell* liability for Claim 3; however, the Court considers these arguments for Claim 4. *See* Mot. at 6:6–7:19.

United States District Court
Northern District of California

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

Here, the TAC is devoid of facts supporting supervisory action in the alleged incident involving Naderi and Jimenez—this omission is fatal to Valdez's claim. A municipality cannot be vicariously liable under section 1983 for an employee's actions. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Nor can a municipality be liable under section 1983 under a *respondeat superior* theory. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021)) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 563 U.S. 658, 691 (1978)) (emphasis original). Therefore, because Valdez does not identify an individual supervisor in the TAC to whom section 1983 liability could attach, he fails to plead a cognizable claim, and dismissal is warranted.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Valdez's Failure to Train and Supervise Claim against Defendant City (Claim 3). As Valdez does not articulate a basis for supervisor liability in his Opposition, the Court **DENIES** Valdez leave to amend.

### 2.    *Monell* Liability For Unconstitutional Custom Or Policy

Defendants argue that the Court should dismiss Valdez's *Monell* Claim against Defendant City (Claim 4) because Valdez "pleads an isolated incident of alleged excessive force, which does

not plausibly support a theory of widespread practice or custom of excessive force for *Monell* liability." Mot. at 2:12–14. Valdez contends that he sufficiently alleged a *Monell* claim against Defendant City "for failure to train its officers." Opp. at 7:23–24 (citing TAC ¶¶ 15–16, 23–26, 29).

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 563 U.S. at 692). However, the municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis in original). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted).

To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 563 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479–80 (emphasis in original). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting *Monell*, 436 U.S. at 694). "A policy or custom may be found either in an affirmative proclamation

12

of policy or in the failure of an official to take any remedial steps after [constitutional] violations."

*Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (alteration added) (cleaned up).

Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). To allege a failure to train under *Monell*,

> a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees.

*Benavidez*, 993 F.3d at 1153–54.

Third, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez*, 891 F.3d at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (cleaned up)).

Here, Valdez asserts that he sufficiently alleges *Monell* liability against Defendant City based on a failure to train theory—he does not contend in his Opposition that he alleges *Monell* liability based on the other two theories of liability. Opp. at 7:8–9:8. The parties disagree on whether Valdez can establish failure to train *Monell* liability through his allegations involving a single incident of excessive force. Valdez argues that his alleged isolated incident of excessive force falls within the exception to the general rule that a plaintiff must show a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifferences for purposes of failure to train. *Id.* at 7:23–8:18 (citing *Connick*, 563 U.S. at 62). Defendants respond that while deliberate indifference can be inferred from a single incident, an inadequate training policy itself cannot be inferred from a single incident. Reply at 2:8–11 (citing *Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022)). Thus, according to Defendants, "[b]ecause Plaintiff pleaded no factual basis for any deficiency in training, he fails to state a claim of failure

United States District Court
Northern District of California

to train under *Monell*." *Id.* at 2:12–13.

Defendants have the better argument. The Ninth Circuit explained:

> While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious, an inadequate training policy itself cannot be inferred from a single incident. Otherwise, a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality.

*Hyde*, 23 F.4th at 874–75 (cleaned up). In other words, Valdez cannot rely on a single incident of excessive force to demonstrate that Defendant City had an inadequate municipal training policy, a required element of his failure to train *Monell* claim. *Id.* at 875. As in *Hyde*, Valdez does not plead facts suggesting that Defendant City had a defective training policy. *Id.* In *Hyde*, the plaintiffs made only conclusory allegations regarding a failure to train and argued in their brief that their claims were supported by the "events giving rise to the excessive force and inadequate medical care claims." *Id.* at 874. Similarly, in his Opposition, Valdez points to his excessive force allegations as support for his *Monell* claim. Opp. at 8:18–9:8. And in the TAC, Valdez makes conclusory statements about the failure to train but does not allege any facts about the training received by SFPD officers. Mot. at 7:3–10 (citing TAC ¶¶ 90–93, 96); *see, e.g.,* TAC ¶¶ 96–97 ("Furthering this practice [to use excessive force during detentions without proper justification], [Defendant City] has either failed to train its officers to not illegally seize individuals or has ratified improper training on this point."). Therefore, Valdez fails to plead a cognizable failure to train claim, and dismissal is warranted.

Valdez's cited cases do not compel a different conclusion. First, all the cited cases predate *Hyde* and thus did not have the benefit of the Ninth Circuit's guidance there. *See* Opp. at 8:8–17, 9:1–8. Second, Valdez fails to parse an inference of deliberate indifference from an inference of an inadequate training policy. For example, in *Dizon v. City of S. San Francisco*, relied on heavily by Valdez, the court held that the plaintiff need not allege a pattern of similar constitutional violations to demonstrate *deliberate indifference*. *See id.* at 8:4–17; *Dizon*, No. 18-cv-03733-JST, 2018 WL 5023354, at *3–4 (N.D. Cal. Oct. 16, 2018). Unlike here, the plaintiff in *Dizon* alleged facts showing that a specific training policy on body cavity searches was inadequate. *Dizon*, 2018

14

WL 5023354, at *4 n.1.  Therefore, *Dizon* does not stand for the proposition that a single incident can create an inference of an inadequate training policy in the absence of facts about that training policy.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Valdez's *Monell* Claim against Defendant City (Claim 4).  Because Valdez fails to cure deficiencies in his *Monell* claim, the Court **DENIES** Valdez leave to amend.  *See Carvalho*, 629 F.3d at 892 (explaining a court "may exercise its discretion to deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed").

## D.    California State Law Claims

Defendants argue that the Court should dismiss all of Valdez's claims under California law (Claims 5–10) because (1) Valdez "fails to plead compliance with the California Government Claims Act"; (2) Valdez fails to allege a cognizable claim for Intentional Infliction of Emotional Distress ("IIED") against Defendant Jimenez; and (3) Valdez's Negligent Hiring, Training, and Retention Claim fails as a matter of law.  Mot. at 2:15–21.

### 1.    Negligent Hiring, Training, And Retention Claim

Defendants argue that Valdez's Negligent Hiring, Training, and Retention Claim (Claim 8) fails as a matter of law because this claim cannot exist against the City as a public entity.  Mot. at 12:10–11.  Valdez does not address this claim in his Opposition nor respond to Defendants' arguments regarding this claim.  *See generally* Opp.

Here, Defendants contend that "[s]ince [Valdez] fails to address Defendants' arguments for dismissal, this claim is abandoned and dismissal is appropriate."  Reply at 9:6–9.  The Court agrees.  *See Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate.") (citations omitted).  Therefore, dismissal is warranted.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Valdez's Negligent Hiring, Training, and Supervision Claim against Defendant City (Claim 8).  Because Valdez has abandoned his claim, the Court **DENIES** Valdez leave to amend.

15

### 2.    California Government Claims Act

Defendants argue that none of Valdez's state claims are cognizable because Valdez "does not allege compliance or circumstances excusing compliance with the Government Claims Act[.]" Mot. at 11:6–8. Valdez contends that his state law claims "are sufficient under the doctrine of equitable tolling and estoppel." Opp. at 1:20–21. Defendants respond that Valdez does not "plead sufficient facts to warrant equitable remedies" in his TAC. Reply at 1:7–8.

The California Government Claims Act "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts." *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099, 1104–05 (2015) (citing Cal. Gov't Code § 810 et seq.). The Government Claims Act requires plaintiffs to present "'all claims for money or damages against local public entities' . . . to the responsible public entity before a lawsuit is filed." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 734 (2007) (quoting Cal. Gov't Code § 905). The Government Claims Act also applies to claims against public employees and former public employees for acts or omissions committed within the scope of their employment as public employees. Cal. Gov't Code § 950.2; *see also Briggs v. Lawrence*, 230 Cal. App. 3d 605, 613 (1991) (noting "what amounts to a requirement that (with exceptions not relevant here) one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment have filed a claim against the *public-entity employer* pursuant to the procedure for claims against public entities") (emphasis in original); *Olson v. Manhattan Beach Unified Sch. Dist.*, 17 Cal. App. 5th 1052, 1055 n.1 (2017) ("The defense of noncompliance with the Government Claims Act also applies to the claims against [individual defendant public employee].").

A plaintiff's complaint must "allege facts demonstrating or excusing compliance with this claim presentation requirement[.]" *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1237 (2004); *accord Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (requiring plaintiff to "allege compliance or circumstances excusing compliance" with the California Tort Claims Act).

Here, the parties agree that Valdez did not facially comply with the Government Claims Act (the "Act") because Valdez filed his original complaint in this case more than six months after

16

United States District Court
Northern District of California

1    Defendant City denied his claims filed against the City.  Opp. at 9:25–10:6; Reply at 3:6–9.

2    Specifically, Valdez filed his original complaint forty days after January 13, 2024, the deadline to

3    file the complaint to comply with the Act.  Opp. at 15:19–21; *see* Cal. Gov't Code § 945.6(a)(1)

4    ("[A]ny suit brought against a public entity . . . must be commenced:  (1) If written notice is given

5    in accordance with Section 913, not later than six months after the date such notice is personally

6    delivered or deposited in the mail."); ECF No. 34-4 (claim rejection notice dated July 13, 2023).

7    The dispositive issue is whether, despite Valdez's failure to comply with section 945.6 of the Act,

8    his claims are nonetheless timely under a doctrine that tolls the statute of limitations.

9    　　　　As a threshold issue, Defendants repeatedly misstate the pleading standard for claims

10    subject to the Act—a plaintiff may *either* plead facts demonstrating compliance with the Act *or*

11    plead facts excusing compliance with the Act.  *State of California*, 32 Cal. 4th at 1239; *see, e.g.,*

12    Mot. at 10:20–21 ("The Court need not reach the substance of [Valdez's] state law claims because

13    the TAC fails to plead compliance with the Government Claims Act.").  Indeed, after holding that

14    the claim presentation requirement of the Act is an element of a cause of action against a public

15    entity, the California Supreme Court remanded the case for consideration of "whether plaintiff

16    had, in fact, alleged facts sufficient to excuse compliance on the ground of estoppel[.]"  *State of*

17    *California*, 32 Cal. 4th at 1243, 1245.  In short, Valdez is not required to explicitly reference the

18    Act or its requirements in his complaint; he is only required to "alleg[e] an appropriate excuse,

19    such as equitable estoppel."  *Id.* at 1245.

20    　　　　　　a.　　　　**Equitable Estoppel**

21    　　　　Valdez argues that his state law claims are "tolled by the doctrine of equitable estoppel

22    because he feared retaliation from [Naderi] if he brought suit against him and [Defendant City]."

23    Opp. at 16:4–7.  Defendants respond that Valdez's TAC "fails to plead sufficient facts to support

24    equitable estoppel."  Reply at 7:20.

25    　　　　Under the doctrine of equitable estoppel, "[i]t is well settled that a public entity may be

26    estopped from asserting the limitations of the claims statute where its agents or employees have

27    prevented or deterred the filing of a timely claim by some affirmative act."  *John R. v. Oakland*

28    *Unified Sch. Dist.*, 48 Cal. 3d 438, 445 (1989) (citations omitted).  While "[e]stoppel most

commonly results from misleading statements about the need for or advisability of a claim," this is not always the case—"estoppel may certainly be invoked when there are acts of *violence* or *intimidation* that are *intended* to prevent the filing of a claim." *Id.* (emphasis in original); *see also Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383 (2003) ("To create an equitable estoppel, it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.") (cleaned up). Tolling under equitable estoppel applies during the period that the threats or intimidation prevent a plaintiff from pursuing their claims. *John R.*, 48 Cal. 3d at 446.

Here, the Court concludes that Valdez sufficiently alleges facts in the TAC demonstrating circumstances excusing compliance with the Act under the doctrine of equitable estoppel. Taking Valdez's allegations as true, as the Court must, Valdez establishes the following in the TAC: Naderi used excessive force against Valdez, causing Valdez to suffer serious injuries; after Valdez complained to the SF DPA about the excessive force incident, Naderi "taunted and harassed" Valdez on at least five separate instances, spanning a six-month time period; in his capacity as an SFPD police officer, Naderi harassed Valdez and visited Valdez at Valdez's place of employment while on duty; Valdez felt harassed and threatened by Naderi, feared for his life, and eventually lost his job due to safety concerns; Valdez feared the consequences of filing a formal lawsuit against Naderi and others; Valdez eventually moved from California to Washington because he "could no longer live with the constant fear of living in San Francisco"; and Valdez did not file his initial complaint until he secured residence out of state. *See* TAC ¶¶ 23–24, 41–44, 52–53, 63–73; ECF No. 69 (Request for Judicial Notice). These facts are sufficient to plausibly allege that Naderi—while acting within his scope of employment with Defendant City—intimidated Valdez with the intention of preventing Valdez from bringing a formal lawsuit. *See John R.*, 48 Cal. 3d at 444 (inquiring whether "the facts alleged in the complaint, if proven, might well demonstrate that the claim was timely filed under a theory of equitable estoppel").

Moreover, contrary to Defendants' assertion, Valdez's allegations support the inference that Naderi's conduct "actually and reasonably induced" Valdez "to forbear suing within" the six-month period of section 945.6. *See* Reply at 7:26–8:3; *contra Lantzy*, 31 Cal. 4th at 385 (holding

equitable estoppel insufficiently pled where "plaintiffs have pled no facts indicating that defendants' conduct directly prevented them from filing their suit on time"). Indeed, Valdez alleges that he waited to file his original complaint until he left San Francisco, where he lived in "constant fear." TAC ¶¶ 71–73; Opp. at 17:12–14. Therefore, Valdez pleads facts sufficient to establish that equitable estoppel tolls the statute of limitations in section 945.6 of the Act.

Defendants' remaining arguments are unpersuasive. Defendants cite no authority for their proposition that Naderi's alleged "conduct does not constitute violence or intimidation intended to prevent filing of a claim" as a matter of law. Reply at 7:20–23. In fact, even at the summary judgment stage, courts have found that a plaintiff's averment that she was prevented from filing a timely claim on account of "her fear of retaliation from the officers due to what she perceived as their threatening conduct" created a triable issue of fact where defendants asserted that the named police officers never threatened plaintiff with "any harm or violence to dissuade her from filing a timely claim." *McMahon v. Valenzuela*, No. 14-cv-02085-CAS(AGRx), 2015 WL 5680305, at *12 (C.D. Cal. Sept. 24, 2015). *A fortiori*, on a motion to dismiss, Valdez's allegations in the TAC that he feared consequences of filing suit based on what he perceived as threatening and harassing conduct by Naderi is enough to defeat Defendants' request for dismissal.

Further, Defendants' arguments attacking the severity of Naderi's purported conduct and the reasonableness of Valdez's response are not appropriate at this stage. Reply at 7:20–8:3. To be sure, Valdez may not be able to ultimately prove that equitable estoppel should toll the limitations period—but that is a question for summary judgment, or trial, and the Court will not engage in impermissible fact finding at the dismissal stage. *See John R.*, 48 Cal. 3d at 446 (noting questions of fact regarding equitable estoppel include whether threats were made and when the effects of the threats ceased). Therefore, because Valdez's TAC demonstrates that his failure to comply with the Government Claims Act is excused, dismissal of his state law claims is not warranted.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Valdez's Bane Act Claim (Claim 5), IIED Claim (Claim 6), Battery Claim (Claim 7), Negligence Claim (Claim 9), and False Arrest and False Imprisonment Claim (Claim 10). Given the Court's ruling, it need not address

19

Valdez's argument regarding the doctrine of equitable tolling.

### 3.    Intentional Infliction Of Emotional Distress Claim Against Officer Jimenez

Defendants argue that Valdez's IIED Claim against Defendant Jimenez (Claim 6) is not cognizable because "[t]here are no facts to suggest that [Jimenez] engaged in any extreme and outrageous conduct with the intent of causing emotional distress, or that [Valdez] suffered from emotional distress as a result of [Jimenez's] conduct." Mot. at 2:17–20. Valdez contends that he "details numerous actions taken by [Jimenez] that satisfy each element of his IIED claim." Opp. at 18:6–7.

Under California law, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (cleaned up). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1050–51 (cleaned up). Whether "conduct has been sufficiently extreme and outrageous to result in liability" is a question of fact. *Cross v. Bonded Adjustment Bureau*, 48 Cal. App. 4th 266, 283 (1996).

Here, the Court concludes that Valdez alleges a cognizable claim for IIED against Jimenez. Defendants' contention that Valdez's theory underlying his IIED Claim against Jimenez is premised solely on "Jimenez's involvement in handcuffing [Valdez]" is disingenuous. Reply at 8:16–18. Valdez alleges the following: After Naderi had slammed Valdez's head on the concrete, caused him to lose consciousness, and placed his body weight on Valdez's neck, Jimenez continued to pin and restrain Valdez's hands. TAC ¶¶ 22–27. After Naderi compressed Valdez's airway and impaired his ability to breathe, "Jimenez continued to pin [Valdez] down to the ground," despite Valdez pleading with the officers to stop. *Id.* ¶¶ 28–30. Valdez had a large gash on his head from being smashed into the concrete. *Id.* ¶ 32. And a bystander exclaimed that two

cops were "beating the shit out of a guy." *Id.* ¶ 31. Collectively, these allegations show that at the very least, reasonable minds could differ as to whether Jimenez's conduct was sufficiently extreme and outrageous. *Cf. Cross*, 48 Cal. App. 4th at 284. It is a reasonable inference that pinning a person down who is injured and cannot breathe will likely cause that person severe emotional distress. Moreover, Valdez alleges that the excessive force used against him by Naderi and Jimenez resulted in "great distress" from necessary surgery, and "extreme anxiety attacks, paranoia, and depression." TAC ¶¶ 49, 72, 113. Therefore, Valdez pleads sufficient facts to establish an IIED claim against Jimenez.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Valdez's IIED Claim against Jimenez (Claim 6).

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

**IT IS SO ORDERED.**

Dated: August 18, 2025

THOMAS S. HIXSON
United States Magistrate Judge